[No. 34926.   *En Banc.*   July 14, 1960.]

OLYMPIA STATE BANK AND TRUST CO., *Respondent,* v. H. J. CRAFT *et al., Defendants,* HAROLD A. PEBBLES, *as Trustee in Bankruptcy, Appellant.*[1]

*Pebbles & Swanson* (*Vernon Lee Lindskog,* of counsel) and *Walter F. Pitts,* for appellant.

*Foster & Foster,* for respondent.

OTT, J.—May 5, 1955, H. J. Craft executed a chattel mortgage upon two automobiles (a 1952 Cadillac and a 1952 Nash

[1] Reported in 354 P. (2d) 386.

belonging to the marital community of himself and Elizabeth Craft) to the Olympia State Bank and Trust Co. (hereinafter referred to as the bank) to secure a note in the sum of $2,309. The certificates of ownership to the two automobiles issued by the department of licenses were endorsed to show the bank as the legal owner, in compliance with RCW 46.12.170 (hereinafter referred to as the registration act), which provides:

"If, after a certificate of ownership is issued, a mortgage is placed on the vehicle described therein, the registered owner shall, within ten days thereafter, present his application to the director, signed by the mortgagee, to which shall be attached the certificate of license registration and the certificate of ownership last issued covering the vehicle, . . . The director, if he is satisfied that there should be a reissue of the certificates, shall note such change upon his records and issue to the registered owner a new certificate of license registration and to the mortgagee a new certificate of ownership. . . ."

The bank did not file the chattel mortgage in the office of the county auditor, as required by RCW 61.04.020 (hereinafter referred to as the filing act), which provides:

"(1) A mortgage of personal property is void as against all creditors of the mortgagor, both existing and subsequent, whether or not they have or claim a lien upon such property, and against all subsequent purchasers, pledgees, and mortgagees and encumbrancers for value and in good faith, unless it is accompanied by the affidavit of the mortgagor that it is made in good faith, and without any design to hinder, delay, or defraud creditors, and unless it is acknowledged and filed within ten days from the time of the execution thereof in the office of the county auditor of the county in which the mortgaged property is situated as provided by law. . . ."

February 14, 1958, the bank commenced this action in the superior court for Thurston county to foreclose the chattel mortgage, alleging that H. J. Craft had defaulted in the payments upon the note, and that the sum of $1,074.26 was due, owing, and unpaid.

March 5, 1958, H. J. Craft was adjudicated a bankrupt, and Harold A. Pebbles was appointed and qualified as

trustee. The trustee, representing the general creditors of the bankrupt, was granted leave to intervene in the chattel mortgage foreclosure proceedings. The trustee's amended complaint in intervention alleged, *inter alia*, that the bank had failed to file its chattel mortgage as required by the filing act, and that the alleged chattel mortgage was void as against the claims of the general creditors of the bankrupt.

The cause was submitted to the court upon stipulated facts, substantially as above set out. The trial court held that the motor vehicle registration act superseded the filing act, and "that it has become no longer necessary for a chattel mortgagee of any motor vehicle to comply with . . . RCW 61.04.020 [the filing act]."

From a judgment in favor of the bank, the trustee in bankruptcy has appealed.

The sole question presented by this appeal is: Did the legislature intend that the registration act should supersede the filing act so that it is no longer necessary, in order to establish a lien priority over creditors, subsequent purchasers, and encumbrancers, to file a motor vehicle chattel mortgage in the office of the auditor of the county, as provided by the filing act?

We have previously held that compliance with the filing act and noncompliance with the registration act did not preserve the priority of a mortgage lien as to creditors. *Merchants Rating & Adjusting Co. v. Skaug*, 4 Wn. (2d) 46, 102 P. (2d) 227 (1940). In the instant case, we are concerned with the rights of creditors where there was compliance with the registration act, but no compliance with the filing act.

The registration act is a part of the Washington Highway License Act. RCW 46. The highway licensing act was passed primarily for the licensing of motor vehicles and the operators thereof. When the legislature enacted the registration act, it did not expressly repeal the filing act, as applied to motor vehicles. It is a familiar rule of statutory construction that, where, as here, there are two legislative enactments relating to the same subject matter, and

the later act does not expressly repeal the former, the two acts will be read together and, if possible, each will be given meaning, force, and validity. *Lindsey v. Superior Court*, 33 Wn. (2d) 94, 204 P. (2d) 482 (1949). The registration act and the filing act are not inconsistent with each other. When read together, meaning, force, and validity may be given to each.

The filing act provides that a chattel mortgage is void as to creditors, if the statute is not complied with. The registration act has no similar notice provision which purports to affect the validity or enforcibility of a chattel mortgage upon a motor vehicle, when the act is or is not complied with, nor does it provide what effect, if any, compliance or noncompliance has upon the claims of creditors or others who claim a subsequent or prior lien.

A comparison of the registration act with the general filing and recording acts passed by the legislature compels the conclusion that the registration act was not intended to be a filing act, for the following reasons:

(1) The registration act makes no provision for establishing constructive notice of the lien of a chattel mortgage or conditional sale contract; (2) it makes no provision for lien priorities or which class of creditors is protected by compliance or noncompliance with the act; (3) the original instruments are not required to be filed for public inspection, and (4) there is no provision made for fixing venue or for the enforcement of a lien claim.

The registration act, for the same reasons, lacks the essential requirements of a conclusive motor vehicle title act. See *Reconstruction Finance Corp. v. Hambright*, 16 Wn. (2d) 81, 133 P. (2d) 278 (1943); *Junkin v. Anderson*, 12 Wn. (2d) 58, 120 P. (2d) 548, 123 P. (2d) 759 (1941).

Since the registration act lacks the essentials of a filing or notice act and of a conclusive motor vehicle title act, we conclude that the legislature intended that the filing act should remain in full force and effect, and that the registration act supplement the notice provisions of the filing act.

Respondent contends that the only manner by which meaning, force, and validity can be attributed to the regis-

tration act is to construe it as superseding the filing act, in so far as motor vehicles are concerned, and that any other construction renders it a nullity. We do not agree. Motor vehicles are so mobile and transient in nature that one obvious reason for the enactment of the registration act could have been to deter the sales or illegal transfers of stolen motor vehicles and to aid in their detection.

For the reasons stated, the judgment is reversed, and the cause remanded with instructions to enter judgment in accordance with the views expressed herein.

WEAVER, C. J., HILL, DONWORTH, FINLEY, ROSELLINI, and HUNTER, JJ., concur.

FOSTER, J., did not participate in the consideration or decision in this case.

MALLERY, J. (dissenting)—The lien claimant herein has complied with the title registration act (RCW 46.12.170) but not with the chattel mortgage filing statute (RCW 61-.04.020). This is exactly the *reverse* situation from the three cases cited by the majority: *Reconstruction Finance Corp. v. Hambright*, 16 Wn. (2d) 81, 133 P. (2d) 278; *Junkin v. Anderson*, 12 Wn. (2d) 58, 120 P. (2d) 548, 123 P. (2d) 759; *Merchants Rating & Adjusting Co. v. Skaug*, 4 Wn. (2d) 46, 102 P. (2d) 227. We must *for the first time*, therefore, say whether compliance with the title registration act alone creates a valid lien.

Our present question is simply this: Do the requirements for perfecting a chattel mortgage as to motor vehicles under the title registration act supersede the requirements for perfecting a chattel mortgage under the chattel mortgage act, or are they merely additions to the chattel mortgage act? Stated another way, does a valid lien upon a motor vehicle require compliance with both statutes, or is compliance with the title registration act alone sufficient?

Both acts, of course, contemplate the execution of an instrument sufficient in its provisions to constitute a chattel mortgage. The answer to our question, therefore, relates only to the statutory requirements of giving notice for the

purpose of safeguarding subsequent dealings with the motor vehicle in question.

In arriving at the intent of the legislature in enacting the title registration act, a decisive factor is the invariable custom of the legislature to make acts relating to motor vehicles applicable to them only. All such statutes have been *sui generis* from the first such act to the present time. Compliance with the motor vehicle code is and has always been all that is required. This is particularly persuasive in view of the comprehensive nature of the title registration act.

The onerous requirement put upon the transfer and encumbrancing of the title to motor vehicles by the title registration act is compensated by the security afforded the parties. This is because the certificate of title shows the exact condition of the title at all times. Other chattels may be transferred by payment and delivery, the acme of simplicity, but this easy method without any safeguards proved to be undesirable for motor vehicles.

No one has or can point out a single safeguard in the chattel mortgage act that is not more effectively accomplished by the title registration act. Nor can anyone show anything to be accomplished by complying with the chattel mortgage act after complying with the title registration act.

The questions posed by the majority opinion as to procedure and priorities in the case of motor vehicle mortgages, which are perfected by compliance with the title registration act, are answered by reference to the chattel mortgage act itself, which governs the substantive rights of all mortgages. As to the questions relating to notice and constructive notice, it is apparent that no one can deal in any way with the title to a motor vehicle under the title registration act without having actual notice of all encumbrances upon it. This flows from the fact that a registered title speaks the truth at all times because of the requirement that no change can be accomplished without being incorporated into it. The need for constructive notice is thus obviated by the actual notice that all interested parties are bound to have by an inspection of the certificate of title itself. Notice to disinterested parties is academic. Provision for "public notice"

under all statutes is required as a safeguard for interested parties. No legitimate purpose is served by giving notice to strangers who have only a disinterested curiosity.

Practically all existing motor vehicle mortgages will be invalidated by the majority opinion because of the uniform practice of complying only with the title registration act. The resulting hardship and confusion are unnecessary in view of the legislative intent that the motor vehicle code in general and the title registration act in particular should be interpreted as being *sui generis*. Hence, all rights relating to motor vehicles should be ascertainable by reference to the motor vehicle code.

I dissent.