[No. 44-40364-3.    Division Three.    March 20, 1970.]

DISHMAN SECURITY COMPANY, INC., *Appellant*, v. CHARLES C. CHALLINOR et al., *Respondents and Cross-appellants.*

*L. W. Smith* and *Geo. W. Young,* for appellant.

*Robert D. Skidmore,* for respondents and cross-appellants.

GREEN, J.—Plaintiff, Dishman Security Company, Inc., brought suit on a promissory note against Charles and Vyolet Challinor to recover $27,190.80, with interest and attorneys' fees, and to foreclose its security. Defendants answered admitting part of the obligation but alleging as

affirmative defenses (1) failure of consideration resulting from the wrongful disbursement by plaintiff of $10,575; and (2) usury. Plaintiff appeals from a judgment for $9,651.81. Defendants cross-appeal from the failure to find the note usurious.

Defendant, who was in the logging business in Colville, desired to purchase a logging truck and trailer. He approached Alfred Deviny, president of Pioneer Equipment Company, in Spokane, who showed him a truck, being repaired at Williams Equipment Company, and a log trailer located at Pioneer. While unknown to defendant, Pioneer planned to purchase the truck from Williams if a sale were made to defendant. Defendant negotiated a trade-in and signed a purchase order for $10,575. Mr. Deviny approached plaintiff, advising that defendant wanted to finance the purchase of a truck and trailer and refinance his indebtedness on other equipment.

Satisfied as to defendant's financial condition, plaintiff's manager prepared a chattel mortgage and promissory note dated February 9, 1966, for $27,636.56, consisting of $10,575 for the purchase of the truck and trailer (after trade-in); $11,697.57, satisfaction of preexisting liens; $15 filing fee and credit report; and $5,348.99 precomputed time differential, interest charge or other fees under the terms of the note and mortgage. The note and mortgage were then delivered to Deviny who obtained defendants' signatures.

On February 10, 1966, plaintiff issued checks totaling $11,697.57 to pay off preexisting liens and a check to Pioneer for $10,075 in payment of the purchase price. (The sum of $500 was deducted as an alleged appraisal fee.) At this time, plaintiff knew the truck was in the possession of Williams. Pioneer negotiated the check, deposited it in a general bank account, used the money for general expenses, and never purchased the truck from Williams.

Defendant was never notified of the payment of the purchase price to Pioneer. After execution of the note and mortgage, defendant made several demands on Pioneer to

deliver the truck and trailer. Each time defendant was told that repairs remained to be completed. Thereafter, Pioneer became insolvent.

In early April 1966, defendant learned the true facts and promptly contacted plaintiff. This was the first meeting of the parties. Plaintiff told him the proceeds of the loan had been disbursed without having first obtained certificate of title to the truck. Defendant thereupon offered to reimburse plaintiff for the net amount it paid out on preexisting liens in return for a release and cancellation of the note and mortgage. Plaintiff refused, stating that full payment of the note and mortgage would be required. Thereafter, plaintiff commenced this action.

Prior to trial, defendant made payments totaling $2,045.76. The trial court granted judgment for plaintiff in the sum of $9,651.81 ($11,697.57, amount of preexisting liens less $2,045.76, payments made by defendant). From this judgment both parties appeal.

The trial judge, in essence, determined a seller-buyer relationship existed between defendants and Pioneer; a fiduciary relationship existed between plaintiff and defendant as to disbursement of the loan proceeds; plaintiff breached this relationship when it negligently disbursed funds to Pioneer without insuring payment to Williams and delivery of properly endorsed title documents; as between plaintiff and defendant, plaintiff was in a better position to have prevented the loss; and there was a failure of consideration for the note and mortgage to the extent of $10,575. Plaintiff's assignments of error are numerous, but are essentially directed to these findings and conclusions.

■ First, plaintiff contends the court erred in finding a fiduciary relationship between plaintiff and defendant as to the disbursement of this loan proceeds. Plaintiff argues that Pioneer was the agent of defendant for the purpose of receiving the loan proceeds. We disagree. The loan proceeds were the property of the defendants. Plaintiff was looking to the defendant to repay under the terms of the

note and mortgage; plaintiff was in the nature of a trustee of the loan proceeds for the benefit of defendant. Therefore, it was under a fiduciary duty to either pay the loan proceeds directly to defendant or see that all title documents on the truck and trailer were properly executed and delivered prior to disbursement of funds to anyone other than defendant. Plaintiff negligently failed to do so.

The evidence shows that when plaintiff disbursed the loan proceeds, it knew defendant was purchasing the truck and trailer from Pioneer and that this equipment was included in the mortgage. In order to perfect its security interest on the truck, plaintiff knew it was necessary for title to be transferred. This was necessary under the law. RCW 46.12.170; *Williams v. Spring*, 64 Wn.2d 908, 395 P.2d 180 (1964). Plaintiff's manager testified he relied upon the dealer, Pioneer, to transfer and deliver title to plaintiff.

Although plaintiff's manager testified to the contrary, Don Rayburn, manager of the National Bank of Commerce in Colville, testified it was not customary to disburse loan proceeds until proper evidence of the transfer of title was delivered to the financing institution reflecting a change in ownership; the proceeds of a loan would be released to whoever delivered proper title; and this is customary in the industry. This was confirmed by testimony that Jack Pring, Jr., of Appleway Motors, plaintiff president's son, told plaintiff's manager he should have obtained title before releasing the money. Mr. Rayburn also testified if a financing institution relies on the dealer to transfer title properly reflecting the lender's security interest and change of ownership, an agreement is entered into with the dealer and appropriate security taken by lender to protect against the dealer's failure to properly perform. The evidence was sufficient for the trial court to find a fiduciary relationship existed between the parties as to disbursement of the funds and that plaintiff was negligent in releasing the loan proceeds to Pioneer without first securing proper transfer of title.

■ As between two innocent parties, the one who renders the loss possible or could have prevented it must bear the loss and is estopped to recover from the other. *Beckmann v. Ward,* 174 Wash. 326, 24 P.2d 1091 (1933); 28 Am. Jr. 2d *Estoppel and Waiver* § 62. It was not error for the trial court to have applied the doctrine of comparative innocence as additional support for its conclusion. Except for plaintiff's negligent disbursement of the loan proceeds without first insuring proper transfer of title, no loss would have occurred.

■ Second, plaintiff contends the trial court erred in finding a failure of consideration. We disagree. When plaintiff negligently paid the money to Pioneer, consideration for the note to that extent failed. The trial court properly ordered restitution of the amount paid by plaintiff on account of preexisting liens, *i.e.,* $11,697.57 less $2,045.76 or the net sum of $9,651.81.

Plaintiff's contentions that a simple debtor-creditor relationship existed between plaintiff and defendant as to disbursement of the loan proceeds; that if plaintiff wrongfully paid the money to Pioneer, defendant had the burden of establishing such fact by clear, cogent and convincing evidence even though fraud was not alleged; that defendant failed to make a valid tender of reimbursement for sums paid on preexisting liens; and that the trial court erred in denying the motion to reopen and take additional testimony are without merit.

■ Defendant on his cross-appeal contends the note was usurious. This claim is based upon the contention that the $500 deducted by plaintiff from the payment made to Pioneer was a discount and when added to the time finance charge computed in the face amount of the note exceeded 12 per cent per annum. Defendant contends that penalties should be assessed by reason thereof. This position is not well taken. The effect of the trial court's decision was to restore the parties as between themselves to the same position they were in before the note was executed. No interest

136

was included. Plaintiff's attempt to engage in usury was not consummated. Application of usury penalties under these circumstances was properly denied. *Western Loan & Bldg. Co. v. McGillivrae,* 141 Wash. 392, 251 P. 770 (1926).

Judgment affirmed.

EVANS, C. J., and MUNSON, J., concur.